**United States District Court**
**Northern District of Alabama**
**Southern Division**

FILED
00 JAN 28 PM 2:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| Robert Coleman, | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-99-N-0532-S |
| Wal-Mart Stores, Inc., and Paula Aldredge, an individual, | ] |
| Defendant(s). | ] |

ENTERED

JAN 2 8 2000

## Memorandum of Opinion

In this action, plaintiff Robert Coleman ("Coleman") brings suit under 42 U.S.C. 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981 against defendant Wal-Mart Stores, Inc. ("Wal-Mart") alleging disparate treatment based on race. Specifically, Coleman alleges that he was terminated because of his race, African American, and that Wal-Mart treated white comparators more favorably with respect to discipline and scheduling. Plaintiff also brings state law claims of defamation and intentional interference with business relations against Paula Aldredge ("Aldredge"), a co-employee who accused him of sexual harassment, and a related claim of negligent supervision against Wal-Mart.

The matter is presently before the court on Wal-Mart and Aldredge's motion for summary judgment that was filed on November 1, 1999 [Document # 31]. The motion has been fully briefed and, under the court's initial order [Document # 10], was automatically submitted for decision on December 4, 1999. Upon due consideration, the motion for summary judgment will be granted on the plaintiff's federal claims and the state law claims

42

will be dismissed without prejudice so that the plaintiff, if he wishes, may pursue them in state court.

## I. **Statement of Facts.**[1]

Robert Coleman began his employment with Wal-Mart in November of 1995, as a stocker at the defendant's store in the Huffman area of Birmingham, Alabama. He was at one time promoted to the position of manager of the furniture department, but returned to the stock position at his own request. During most of his tenure at the store, Coleman was generally considered to be a dependable employee. Nevertheless, on August 5, 1998, he was terminated after defendant Aldredge, a female co-employee, accused him of engaging in sexually harassing conduct.

For summary judgment purposes, all of the relevant events occurred in 1998. In early 1998, Coleman's hours changed from the 4:00 a.m. to 12:00 noon shift to the 11:00 p.m. to 7:00 a.m. shift. Wal-Mart states that the change was a result of a new computerized customer scheduling plan that explicitly directed that there should be a stocker in the furniture department during the day time. According to Coleman, he was told he was being moved because all stockers were supposedly going to nights, and if he did not agree to the change, he would not get any hours. However, he alleges that at the time the new schedule was implemented, he was the only stocker moved to night hours.

---

[1] In developing the statement of facts in this opinion, the court considered those facts claimed to be undisputed by the parties, the parties' respective responses to those claims, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert denied, USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

In June of 1998, Coleman received a "write-up" after Aldredge allegedly reported Coleman to management for going into "the office" and removing a personnel file. According to the plaintiff, it was Aldredge who actually called him into the office and asked him to look at a document. After an investigation by store manger Mark Ellington, ("Ellington"), Coleman was cleared of all charges and the "write-up" was rescinded.

On July 28, 1998, Coleman was again written-up – this time for "shopping on the clock" in violation of Wal-Mart policy. According to Wal-Mart, while Coleman was on the clock, Ellington witnessed him putting pet food in a shopping cart and then paying for it after he had clocked out. Plaintiff responds that he was merely picking up items from his area that did not belong there and putting them in another area.

The next day, Ellington wrote Coleman up again, this time for taking an unauthorized break while on the clock as he was drinking a coke, smoking a cigarette and talking to other employees in the store parking lot. The plaintiff does not dispute that this incident actually occurred. He claims, however, that he had done it before and had not been disciplined. At the time of this discipline, Coleman told Ellington of two white employees who had put cups of coffee in their buggies and had drunk them while they worked in the store. Responding to this allegation, Ellington conducted a store meeting during which he informed all store employees that they would be disciplined if they failed to clock out before taking breaks.

On August 3, 1999, team leader Art Jemison informed Coleman that Aldredge had accused the plaintiff of "grabbing his groin and throwing obscene gestures to her." (Coleman Depo. p. 25). In particular, Aldredge testified that as Coleman looked and

grinned at her, he grabbed his testicles and shook them. Coleman denies the allegation, as well as other allegations that he had used profanity and engaged in the use of sexual innuendos in the workplace. Moreover, he claims that Aldredge fabricated the sexual harassment charge in retaliation for his part in the office incident involving the personnel file in June of 1998. On August 5, 1998, Ellington notified Coleman that he was being terminated for sexually harassing Aldredge.

On October 8, 1998, Coleman filed an EEOC charge alleging discrimination on the basis of race. In March of 1999, he filed the present lawsuit after receiving his right to sue letter from the EEOC.

## II.   Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*,

4

477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**III.    The McDonnell Douglas Framework.**

This case involves the application of Title VII of the Civil Rights Act and 42 U.S.C. § 1981 to claims of race discrimination. Plaintiff seeks to establish his claims based solely on circumstantial evidence, thus invoking the familiar framework set out in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).[2]

---

[2] The *McDonnell Douglas-Burdine* burden shifting analysis was not intended to be "rigid, mechanized, or ritualistic." *Green v. School Bd. of Hillsborough County, Florida*, 25 F.3d 974, 978 (11th Cir. 1994). Instead, it is meant to be a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the

6

Under the *McDonnell Douglas* framework, a plaintiff seeking to establish a claim based on circumstantial evidence has the initial burden of establishing a prima facie case of discrimination. "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 792 (11th Cir. 1999) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The burden of production then shifts to the defendant to articulate a "legitimate nondiscriminatory reason" for the allegedly discriminatory employment action. *Id.* "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 596 (11th Cir. 1987).

Once the defendant presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine* 450 U.S. at 255 n.10. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Conclusory allegations of discrimination are insufficient; rather, the plaintiff must present concrete evidence of pretext in the form of clear and specific facts. *Earley v. Champion*, 907 F.2d 1077, 1083-84 (11th Cir. 1990). A plaintiff may establish pretext directly by persuading the court that a

---

critical question of discrimination." *Id.*

7

discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Combs v. Plantation Planters*, 106 F.3d 1519, 1528 (11th Cir. 1997); *see also Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 658 (11th Cir. 1998)(declaring that the defendant was not entitled to judgment as a matter of law if plaintiff produced "any evidence that would allow a reasonable jury to disbelieve the proffered reasons for his discharge").

If a plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the *prima facie* case, is sufficient circumstantial evidence to support a finding of discrimination and to preclude summary judgment. *Combs*, 106 F.3d at 1529. Because of the difficult factual questions involved in assessing "an employer's true motivations," once the plaintiff has presented evidence raising a question about those motivations, summary judgment is ordinarily inappropriate. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If evidence in the record "demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's preferred legitimate reasons for its action that a legitimate factfinder could find them unworthy of credence," the final assessment of the employer's motivation must be left to the jury. *Combs*, 106 F.3d at 1538.

## IV. Discussion.

### A. The Disparate Treatment Claim.

Coleman contends that Wal-Mart terminated his employment on the basis of his race. Coleman has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. For these purposes, it is important to remember that

8

one of the principal functions of the *prima facie* case is to raise an *inference* of discriminatory intent. *See Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). In order to establish a *prima facie* case of discrimination, Coleman must produce sufficient evidence to create a genuine issue of material fact on each of the following matters: (1) he belongs to a protected class; (2) he was accused of engaging in misconduct that was similar to that of persons outside his protected class; and (3) his employer treated him less favorably than similarly situated employees outside the protected class. *Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), *modified in non-relevant part on denial of reh'g.*, 151 F.3d 1321 (11th Cir. 1998).

It is undisputed that Coleman is a member of a protected class, and that he was disciplined for (1) smoking, drinking a beverage, and taking a break while on the clock and (2) for allegedly shopping on the clock. However, he admits that both black and white employees engaged in similar conduct and were not disciplined. Thus, not only did Wal-Mart treat similarly situated employees "outside" the plaintiff's class more favorably than Coleman, but it also treated every similarly situated black employee more favorably than it treated Coleman. Coleman testified in deposition:

> Q:  (Mr. Sheffield) And you think it was discriminatory to give you that write-up?
>
> A:  (Mr. Coleman) Yes.
>
> Q:  Why is that?
>
> A.  Because other white associates shopped on the clock all the time.
>
> Q:  Who?

9

> A: Betty Tucker; just about any other associate that was in the store at that particular time would shop especially when they were having sales they would take stuff and put it in buggies. And Mark Ellington was aware of it.
>
> Q: Are you saying just about any employees, black and white, did it?
>
> A: Most, yes.

(Coleman Depo. p.73-74)[3]. Similarly, Coleman testified that smoking on the job was done "throughout the store," and on a "regular basis," and that everyone drank soda and/or water on the job. (Coleman Depo. pp. 78-83). There is no evidence to indicate that any other Wal-Mart employee, black or white, had been written up for engaging in either activity.

The defendant asserts that since the only evidence is that everyone, black and white, was treated more leniently than was the plaintiff, there can be no inference of discrimination and the requisite *prima face* case is not established. Although the court has found no binding precedent that squarely addresses this issue, there is analogous authority to support Wal-Mart's position. In *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1323 (11th Cir. 1998), in affirming the district court the Eleventh Circuit stated,

> In this disciplinary discharge case, no direct evidence of discrimination was submitted at trial. No statistical evidence was presented. No evidence shows that, after Plaintiff was fired, she was replaced by a nonminority employee. No

---

[3] Despite the plaintiff's statements that just about any employee, regardless of race, shopped on the clock, the plaintiff cites to Shelia Cooper's testimony as evidence that African-American employees did not shop on the clock. (Cooper Deposition p. 39). However, this testimony only demonstrates her personal opinion that she did not know of an African-American who partook in the prohibited conduct. Giving the plaintiff every reasonable inference, this testimony does not rise to a level in which a genuine issue of fact is created.

10

> pattern-or-practice of discrimination was evidenced or attempted to be evidenced. And most important, no similarly situated, nonminority employee was identified who was treated better than Plaintiff.

*Id.* at 1324. The court stated that the plaintiff did not establish the prima facie case because one could not infer from the evidence, including evidence excluded at trial but considered on appeal, that it was *"more likely than not"* that the plaintiff's termination was based on an illegal discriminatory criterion. *Id.* at 1323; *see also Smith v. Secretary of the Navy*, 659 F.2d 1113, 1119 (D.C. Cir. 1981)(declaring that a prima facie case requires the plaintiff to make a showing that the adverse employment action, such as discipline, would not have occurred "but for" an act of discrimination).

Following the reasoning of *Jones*, Coleman has not established a prima facie case. The evidence is that although non-minority employees similarly situated to Coleman engaged in similar behavior with no corresponding discipline, similarly situated minorities also received the same favorable treatment. Moreover, there is no direct, statistical, or pattern and practice evidence which indicates the discipline was based on illegal discriminatory criterion. Unfortunately for Coleman, what the evidence suggests is that he was treated differently than every other employee, African American or white. As such, one can not infer that it was more likely than not that the plaintiff's discipline was based on his race. Accordingly, there is no inference of discrimination, and Coleman has not met his initial burden of establishing a prima facie case.

Additionally, as for the disparate discipline claim based on drinking and smoking on the clock, the plaintiff has not demonstrated his misconduct was similar to persons

11

outside the class.[4] The only comparative example articulated by the plaintiff concerns an event that happened two days after Coleman was disciplined in which he allegedly pointed out to Ellington two white employees who were drinking coffee on the clock as they pushed a buggy around the store. (Coleman Depo. 47-48). The only reasonable inference to be drawn from this evidence, however, is that these two white employees continued to perform their duties while drinking coffee. That is dissimilar to Coleman's conduct because he did not continue to perform his duties while in the parking lot drinking a soft drink, smoking a cigarette and talking to other employees. The reasonable inference is that Coleman took an unauthorized break while on the clock and that the white employees did not. (Coleman Depo. 75-83; Movant's Statement of Facts #37, 38). The alleged incident regarding coffee drinking is not substantially similar to Coleman's incident.

Assuming, *arguendo*, that Coleman has produced sufficient evidence to survive summary judgment on his *prima facie* case, he cannot rebut the defendant's legitimate nondiscriminatory reason for disciplining him. Wal-Mart states that (1) Ellington was reasonably certain that Coleman was shopping on the clock in violation of store policy and, (2) it is undisputed that Coleman was drinking a beverage, smoking a cigarette, and talking with other employees while on the clock, in violation of Wal-Mart policy. Mr. Coleman has pointed to no evidence that suggests the employer's proffered explanation is unworthy of credence.

---

[4] Although the plaintiff states that the discipline was for drinking a soda on the clock, (Opponent's Responsive Submission in Response to Exhibit D of the Court's Order p. 8), the write-up states that Coleman was observed drinking a coke, smoking a cigarette and talking with other associates in the parking lot while he was on the clock. (Coleman Depo. Defendant's Exhibit 2). Moreover, Coleman admits that he was engaged in this conduct. (Coleman Depo. pp. 78-83).

12

As stated above, it can not be inferred that impermissible racial considerations more likely motivated the employment decision complained of when the evidence is that the employer treated all other similarly situated employees, black and white, identically.

### B. Scheduling & Treatment at Staff Meetings.

Somewhat feebly, the plaintiff claims that the defendant discriminated against him in scheduling and his treatment at staff meetings. However, Coleman has not presented evidence that he was treated less favorably than his white co-workers in terms of work schedule or staff meetings. (*See* Opponent's Responsive Submission in Response to Exhibit D of the Court's Order p. 9). Accordingly, he has not established the requisite *prima facie* case as to either claim.

### V. State Law Claims.

The court having disposed of the plaintiff's federal claims, it will exercise its discretion to dismiss the state law claims without prejudice. The discretion to entertain or dismiss the pendent state law claims continues throughout the judicial proceeding. 42 U.S.C. § 1367; *L.A. Draper & Son v. Wheelbrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).

### VI. Conclusion.

Mr. Coleman may have been treated less favorably than were his co-workers, both black and white. As a general premise, to survive summary judgment, the plaintiff must produce evidence that would justify a fact finder to infer that he was the victim of race discrimination. The plaintiff here cannot do that where the evidence suggests equal treatment of everyone, other than himself.

By separate order, to be entered contemporaneously with this opinion, this action will be dismissed.

13

Done, this __26th__ of January, 2000.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE